UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Timothy M.,[1]

               Plaintiff,                        Court File No.  17-cv-4664 (NEB/LIB)

      v.                                  **REPORT AND RECOMMENDATION**

Nancy A. Berryhill,
Acting Commissioner of Social Security,[2]

               Defendant.

      Plaintiff, Timothy M. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

      Both parties submitted cross-motions for summary judgment, [Docket Nos. 13, 17], and the Court took the matter under advisement on the parties' written submissions. For the reasons discussed below, the Court recommends Plaintiff's Motion for Summary Judgment, [Docket No. 13], be **DENIED** and recommends Defendant's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by his name, only his first name and last initial are provided.

[2] After the filing of this lawsuit, Nancy A. Berryhill's official title became "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security"; however, in the present case, Defendant continues to use the caption including the "Acting Commissioner of Social Security" designation without acknowledgment of her new official title. (See, Def.'s Motion for Summary Judgment [Docket No. 17]; Def.'s Mem. [Docket No. 18]). For that reason, the Court maintains the "Acting Commissioner of Social Security" designation in the present case caption.

## I. Procedural History

On January 24, 2006, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 229–233).[3] In a decision dated October 9, 2008, Plaintiff was found disabled as of October 1, 2004. (Tr. 108–114). On July 30, 2015, the Social Security Administration determined that Plaintiff was no longer disabled as of July 15, 2015. (Tr. 119–121). On August 13, 2015, Plaintiff requested reconsideration of the finding that he was no longer disabled. (Tr. 124–125). On October 14, 2015, Plaintiff's request for reconsideration was denied. (Tr. 139–151). On October 29, 2015, Plaintiff filed a written request for a hearing before an Administrative Law Judge regarding the determination that he is no longer disabled. (Tr. 157).

Administrative Law Judge Roger W. Thomas (hereinafter "ALJ") conducted a hearing on June 16, 2016. (Tr. 13). Plaintiff, along with an independent vocational expert, Mitchell J. Norman, ("IVE Norman") testified at the hearing. (Tr. 13). Dr. Robert N. Wilson, Ph. D. ("Dr. Wilson"), Plaintiff's treating psychologist, also appeared at the hearing. (Tr. 13). Due to an office-wide technical problem with the recording systems, however, Dr. Wilson was unable to provide testimony at the hearing and instead submitted written statements and opinions on June 23, 2016. (Tr. 13). Plaintiff was represented by an attorney at the administrative hearing. (Tr. 13). On August 8, 2016, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 13–36). The ALJ concluded that as of September 30, 2015, Plaintiff was no longer disabled within the meaning of the Social Security Act and had not become disabled again since that date. (Tr. 13).

---

[3] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 10], by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of the Administrative Record.

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–5). Subsequently, on August 14, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On October 12, 2017, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 13, 17], and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Eight-Step Analysis

If a claimant's application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

The SSA established an eight-step sequential review process for determining whether a claimant's disability has ceased. 20 CFR § 404.1594(f). "The regulations for determining whether a claimant's disability has ceased may involve up to eight steps." Dixon v. Barnhart, 324 F.3d 997, 1000 (8th Cir. 2003). The eight steps are:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and

(8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Id. at 1000–01 (citing 20 CFR § 404.1594(f)); See also, Wilson v. Astrue, No. 4:09cv1468 TCM, 2011 WL 903084, at *11 (E.D. Mo. Mar. 15, 2011).

"To discontinue a claimant's benefits because his or her medical condition has improved, the Commissioner must 'demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work.'" Muncy v. Apfel, 247 F .3d 728, 734 (8th Cir. 2001) (citing Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991) (citing 20 CFR § 404.1594(b)(2)-(5)). The Social Security regulations define a medical improvement as:

> [a]ny decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] [was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s).

Wilson, 2011 WL 903084, at *11 (quoting 20 CFR § 416.994(b)(1)(I)).

A "[m]edical improvement can be found in cases involving the improvement of a single impairment if that improvement increases the claimant's overall ability to perform work related functions." Id. (citing 20 CFR § 416.994(c)(2)). "Whether a claimant's condition has improved is primarily a question for the trier of fact, generally determined by assessing witnesses' credibility." Muncy, 247 F.3d at 734 (citing Nelson, 946 F.2d at 1316).

**B.  Appeals Council Review**

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is

4

denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1–5).

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the eight steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." <u>Id.</u> "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. <u>See</u>, 20 C.F.R. § 404.1512(a); <u>Whitman v. Colvin</u>, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. <u>Goff v. Barnhart</u>, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

In this matter, Administrative Law Judge Roger W. Thomas ("ALJ") made the following determinations during the eight-step disability evaluation process:

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 9, 2008. (<u>See</u>, Tr. 15). This finding is not in dispute. The Court will refer to this period as "the adjudicated period."

At step two, the ALJ concluded that since "September 30, 2015, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.04, 3.02, 12.02, 12.04, 12.06, or 112.11. (Tr. 17–23). Plaintiff challenges the findings made by the ALJ at step two.

At step three, the ALJ concluded that medical improvement occurred as of September 30, 2015. (Tr. 23). Plaintiff challenges the findings made by the ALJ at step three.

At step four, the ALJ concluded that Plaintiff's medical improvement is related to the ability to work because it resulted in an increase in the Plaintiff's residual functional capacity (hereinafter "RFC") as of September 30, 2015. (Tr. 24). Plaintiff challenges the findings made by the ALJ at step four.

At step five, the ALJ concluded that no exception to medical improvement stated in the Act and Social Security regulations applies.[4]

At step six, the ALJ concluded that the evidence demonstrated that the claimant has medically determinable severe impairments, but that Plaintiff does still retain the capacity to function adequately and to perform the basic activities associated with work. (Tr. 33). The impairments considered by the ALJ were Plaintiff's sarcoid disease, depression, anxiety with panic attacks, Attention Deficit Hyperactivity Disorder, obesity, and a lumbar disorder. (Tr. 16).

At step seven, the ALJ made the following RFC determination:

[T]he impairments present on October 9, 2008, (CPD) had decreased in medical severity to the point where the claimant has the residual functional capacity to

---

[4] Plaintiff argues that the ALJ erred by failing to fully explain his finding that the exceptions described in 20 C.F.R. 404.1594(d) and (e) do not apply. Plaintiff, however, concedes that this is finding is correct. Therefore, because Plaintiff concedes that the ALJ's conclusion is correct and provides no additional argument, the Court will not consider this argument.

perform light exertional work as defined in 20 C.F.R. 20 CFR 404.1567(b). Thus, the claimant can occasionally lift, carry, push or pull 20 pounds at a time, and frequently lift, carry, push or pull objects weighing up to 10 pounds. The claimant can walk for no more than about six hours during an eight-hour workday, stand for no more than about six hours during an eight-hour work day, and can stand or walk for a total of about six hours during an eight-hour workday. The claimant can sit for approximately six hours total during an eight-hour workday. In addition, the claimant is limited to routine repetitive work involving 3-4 step tasks and instructions.

(Tr. 25). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms;" however, the ALJ also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully persuasive to the extent they are inconsistent with the medical evidence of record." (Tr. 29). Plaintiff challenges this credibility finding by the ALJ.

Based on that RFC determination, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (Tr. 33). Plaintiff does not challenge this finding.

Finally, at step eight, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of September 30, 2015, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566)." (Tr. 34). Relying upon testimony from independent vocational expert Mitchell J. Norman, the ALJ specifically found that among the occupations Plaintiff would be able to perform were bench assembler of which there were 218,000 positions in the national economy; assembler hospital products of which there were 219,000 positions in the national economy; lens inserter of which there were 120,000 positions in the

national economy; and document preparer of which there were 68,000 positions in the national economy. (Tr. 35). Plaintiff challenges the findings made by the ALJ at step eight.

Accordingly, the ALJ found that Plaintiff was no longer under a disability, as that term is defined by the Social Security Act, and has not become disabled at any time since his disability ended on September 30, 2015. (Tr. 36).

## IV. Analysis

Plaintiff raises one overarching issue on his appeal of the ALJ's decision: that the ALJ's findings of facts and conclusions of law supporting the ALJ's RFC determination were not supported by substantial evidence in the record. (See, Plf.'s Mem. [Docket No. 14]).

Plaintiff does not appear to dispute the ALJ's determination at the first step of the analysis that he had not engaged in substantial gainful activity during the period between October 9, 2008, and the date of the hearing. (Plf.'s Mem. [Docket No. 14]).

Rather, Plaintiff argues that (1) the ALJ erred by not finding that all of Plaintiff's impairments were severe and disabling at step two of the sequential evaluation (Id. at 10); (2) the ALJ erred by not finding that Plaintiff's impairments met or equaled the criteria of a medical listing; (3) the ALJ failed to fully develop the record by not allowing Dr. Wilson to testify (Id. at 15); (4) the ALJ improperly evaluated certain medical opinions in the record (Id. at 16); and (5) the ALJ's hypothetical question to the vocational expert was improper. (See, Plf.'s Mem. [Docket No. 14]).

For all of these reasons, Plaintiff argues that the ALJ's findings of fact and conclusions of law supporting the ALJ's RFC determination were not supported by substantial evidence in the record.

### A.  Plaintiff's Impairments

As noted above, Plaintiff first argues that the ALJ erred by not finding that Plaintiff's impairments were severe and disabling at step two of the sequential evaluation. (Id. at 10). Specifically, Plaintiff argues that the ALJ should have found that Plaintiff's migraine headaches, insomnia, fibromyalgia, right lower extremity pain, and joint with other pain were severe and disabling. (Id.).

As previously discussed, the Commissioner uses an eight-step evaluation to determine if a claimant is disabled. See, Simmons v. Massanari, 264 F.3d 751, 754 (8th Cir. 2001); 20 C.F.R. § 416.920(a)(4).  Step two of the evaluation states that a claimant is not disabled if his impairments are not "severe." Simmons, 264 F.3d at 754; 20 C.F.R. § 416.920(a)(4). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. See, Bowen v. Yuckert, 482 U.S. 137 at 153 (1987); Id. at 158 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007).  It is the claimant's burden to establish that his impairment or combination of impairments are severe. Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, See, Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and courts have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. See, e.g., Page, 484 F.3d at 1043–44; Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); Simmons, 264 F.3d at 755; Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996).

In the present case, the ALJ held that Plaintiff's migraine headaches, insomnia, fibromyalgia, right lower extremity pain, and joint with other pain were not severe impairments. Specifically, the ALJ found that these alleged impairments did not impose any functional limitations on Plaintiff above and beyond those already included in the RFC: "these conditions do not cause more than a minimal limitation in the claimant's ability to perform basic work activities . . . ." (Tr. 16). This conclusion is supported by substantial evidence in the record.

Regarding Plaintiff's right knee pain, the ALJ specifically found that Plaintiff's purported right knee pain was not supported by the objective medical evidence. (Tr. 16). The evidence in the record supports this finding. Specifically, the evidence in the record shows that on February 11, 2015, Plaintiff received an x-ray on his right knee. (Tr. 453). The x-ray showed that Plaintiff's knee had no "fracture, dislocation, erosion, or effusion." (Tr. 453). Additionally, the x-ray results overall showed that Plaintiff's knee was "normal." (Tr. 453). Furthermore, on February 26, 2016, Plaintiff was treated by Dr. Wiger who opined that an "[e]xamination of the right knee reveals a normal knee joint." (Tr. 566). Thus, based on the aforementioned medical evidence, the ALJ's finding is supported by evidence in the record.

Regarding Plaintiff's headaches and insomnia, the ALJ found that these impairments were episodic in nature and controlled with medication. (Tr. 16). The objective medical evidence in the record supports this finding. Specifically, on October 30, 2015, when discussing Plaintiff's headaches and insomnia, one of Plaintiff's treating physicians, Dr. Jason Reed, M.D. ("Dr. Reed") noted that Plaintiff's "anxiety is clearly circumstantial." (Tr. 510). Similarly, Plaintiff's medical records show Plaintiff has been prescribed medications which effectively deal with these symptoms. (Tr. 510–545). For example, on August 19, 2015, when Plaintiff saw Dr. Reed about his migraines, Dr. Reed suggested Plaintiff take an additional spray of Flonase, take Sudafed, and

take Tylenol. (Tr. 521). Thus, based on Dr. Reed's notes, the ALJ's finding was supported by substantial evidence in the record. See, Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (quoting Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)) ("if an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

Regarding Plaintiff's fibromyalgia, the ALJ found that it, too, was episodic in nature. (Tr. 16). The objective medical evidence in the record likewise supports this finding. Specifically, on January 16, 2016, Dr. Reed noted that Plaintiff's "current episode does sound more along the lines of a fibromyalgia flare, which he has also been diagnosed with in the past. It is commonplace to see that the recovery time after unusual or new physical activity is significantly protracted in patients with fibromyalgia. Overall, however, things seem to be improving over time." (Tr. 503). Given Dr. Reed's medical opinion, there is substantial evidence in the record to support the ALJ's finding regarding Plaintiff's fibromyalgia. Odom v. Berryhill, No. 4:16 CV 1265 ACL, 2017 WL 4339520, at *6 (E.D. Mo. Sept. 29, 2017) (finding that a claimant was not disabled when she had episodic fibromyalgia).

In addition to the ALJ's finding being supported by substantial medical evidence in the record, the Court also notes that Plaintiff does not seem to argue that there is any medical evidence in the record that the ALJ failed to consider that shows that Plaintiff's impairments are severe.

Accordingly, for the reasons explained above, the ALJ's findings that Plaintiff's migraine headaches, insomnia, fibromyalgia, right lower extremity pain, and joint with other pain were not severe is supported by substantial evidence in the record.

**B. Whether the ALJ erred at Step Two in failing to find disability.**

Next, Plaintiff argues that the ALJ erred by concluding that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Plf.'s Mem., [Docket No. 14], at 11).

The determination of whether a claimant meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is made at step two of the disability determination process. 20 C.F.R. § 416.920(a)(4)(iii). During this step, the ALJ has the responsibility to decide whether "medical equivalence" has been established. Id. § 416.926(e). An impairment is medically equivalent under the regulations if it is "at least equal in severity and duration to the criteria of any listed impairment." Id. § 416.926(a). If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled. Id. § 416.920(a)(4)(iii).

**1. Plaintiff's Sarcoidosis (Listing 3.02(C)(3))**

Plaintiff first argues that the ALJ did not fully evaluate all of the elements of sarcoidosis because the ALJ only evaluated Plaintiff's sarcoidosis as it relates to Plaintiff's lungs. (Plf.'s Mem., [Docket No. 14], at 11).

In the present case, the ALJ ultimately decided that Plaintiff did not meet or equal the criteria of Listing 3.02. The claimant has the burden of proving that his impairment meets or equals a listing. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. Listing 3.02(C)(3) requires a $SpO_2$ measured by pulse oximetry to be less than or equal to 87%.[5] 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02(C)(3).

---

[5] $SPO_2$ is an indication of oxygen saturation measured via pulse oximetry. http://www.medilexicon.com/medicalabbreviations.php.

Here, Plaintiff's medical records show that in March 2015, Plaintiff's SpO$_2$ was 98% and in April 2015, Plaintiff's SpO$_2$ was 99%. (Tr. 454, 457). Thus, there is substantial evidence in the record that supports the ALJ's finding that Plaintiff did not meet Listing 3.02. Despite the substantial evidence in the record, Plaintiff contends that the ALJ erred because the ALJ only considered Plaintiff's sarcoidosis as it related to Plaintiff's lungs, as opposed to how it related to Plaintiff's alleged pain in his joints, right knee, right foot, left elbow, and left rib. (Plf.'s Mem., [Docket No. 14], at 12). This argument, however, is without merit.

The record shows that the ALJ properly assessed Plaintiff's allegations that he was experiencing pain due to his sarcoidosis. In assessing the credibility of a claimant, the ALJ is required to examine and apply the five factors from Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929. See, Shultz v. Astrue, 479 F.3d 979, 983 (2007). The factors to be considered are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. See, Polaski, 739 at 1322. The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. See, Id. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. See, Lowe v. Apfel, 226 F.3d 969, 971–72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. See, Id.; Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). Where the ALJ's credibility determination is supported by good reasons and substantial evidence in the record as a whole, the Court is bound to accept the credibility determination of the ALJ. Guilliams v. Barnhart,

14

393 F.3d 798, 801 (8th Cir. 2005) (citing Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003));
See, Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008).

In the present case, Plaintiff's only proffered argument is that the ALJ failed to discuss Plaintiff's pain symptoms, which Plaintiff alleges are related to his sarcoidosis. The ALJ, however, when discussing Plaintiff's sarcoidosis, specifically noted that Plaintiff "does experience some level of pain and limitation." (Tr. 30). The ALJ also noted that the medical records show that Plaintiff's pain symptoms decreased by 75% with appropriate treatment and medication. (Tr. 30). Thus, based on the evidence in the record, the ALJ found that Plaintiff did not experience disabling pain. (Tr. 30).

In drawing the above conclusion, the ALJ did not give significant weight to Plaintiff's testimony regarding his pain. (Tr. 28–32). In his determination of Plaintiff's credibility, the ALJ cited numerous references from the record, including objective medical evidence and Plaintiff's own statements, which contradicted Plaintiff's hearing statements regarding the severity and limiting effects of his impairments. (Tr. 28–32). Specifically, the medical evidence shows that Plaintiff was consistently being taken off of pain medications. (Tr. 432). For example, in the February 25, 2016, treatment notes of Dr. Matthew Monsein, M.D. ("Dr. Monsein"), he noted that he continues to taper Plaintiff off morphine. (Tr. 434). Dr. Monsein also noted that he had encouraged Plaintiff to taper off one of the other two pain medications he was prescribed. (Tr. 434). Furthermore, Plaintiff also indicated to Dr. Wiger on January 26, 2016, that his joint problems "were significantly worse in approximately October 2004." (Tr. 542). Lastly, in his treatment notes from January 8, 2016, Dr. Reed noted that Plaintiff "seems to be currently getting better; from his story, about 75% better." (Tr. 570). Thus, the above medical evidence directly

contradicts Plaintiff's testimony regarding his pain. Accordingly, the ALJ did not err by not giving substantial weight to Plaintiff's testimony regarding his pain. (Tr. 28–32).

Therefore, because there was both ample objective medical evidence in the record that the ALJ relied upon and which contradicted Plaintiff's statements regarding the severity and limiting effects of Plaintiff's impairments, and because the ALJ specifically considered the severity of Plaintiff's pain, the Court is bound to accept the ALJ's credibility determination regarding Plaintiff's testimony. Guilliams, 393 F.3d at 801; Juszczyk, 542 F.3d at 632. Thus, the ALJ committed no error.

Accordingly, the ALJ's determination that Plaintiff's testimony regarding the severity and limiting effects of his impairments was not entirely credible was itself supported by substantial evidence in the record as a whole. Therefore, because the ALJ's determination regarding Plaintiff's testimony and the ALJ's finding regarding Plaintiff's sarcoidosis as previously discussed were both supported by substantial evidence in the record, the Court finds that the ALJ did not err.

### 2. 12.04 and 12.06

Plaintiff argues that the ALJ erred by not finding that Plaintiff meets or equals the criteria for listings 12.04 and 12.06. (Plf.'s Mem., [Docket No. 14], at 14). Importantly, however, Plaintiff does not explain what evidence the ALJ failed to consider or improperly considered in finding that Plaintiff did not meet the criteria for listing 12.04 or 12.06.

The ALJ's decision to deny disability benefits must be supported by substantial evidence in the record as a whole. Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005). The burden of proof, however, is on the Plaintiff to establish that his impairment meets or equals a listing. See, Sullivan v. Zebley, 493 U.S. 521, 530–31 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530 ("An impairment that manifests only some of these

criteria, no matter how severely, does not qualify."); <u>Johnson</u>, 390 F.3d at 1070. "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); <u>Sullivan</u>, 493 U.S. at 531 ("a claimant . . . must present medical findings equal in severity to all the criteria for the one most similar listed impairment.").

The Court finds that the ALJ's finding that Plaintiff did not meet Listing 12.04 and 12.06 is supported by substantial evidence in the record as a whole.[6] In his decision, the ALJ found that Plaintiff did not meet the criteria for "paragraph A" of Listing 12.04.[7] Specifically, the ALJ found that:

> [T]he results of Dr. Wiger's consultative examination failed to produce medical evidence of a depressive disorder. In addition the claimant reported that he has "a little bit" of depression. The claimant reported to Dr. Wiger that his main disability was his sarcoidosis and that he was not mentally disabled. The medical records also noted that the claimant was non-compliant with his psychotropic medication.

(Tr. 21) (internal citations omitted). The Court finds that the ALJ's findings are supported by the record.

Specifically, Plaintiff did, in fact, report that he only had "a little bit" of depression. (Tr. 540–545). Plaintiff also reported to Dr. Donald Wiger, M.D. ("Dr. Wiger") that his main disability was his sarcoidosis and that he was not mentally disabled. (Tr. 540–545). Thus, the ALJ's finding was supported by the record. Additionally, because Plaintiff does not allege, and the Court does not find, that there is any medical information that the ALJ should have—but failed to—consider in finding that Plaintiff did not meet the criteria for "paragraph A" of Listing 12.04, the ALJ's finding was not error.

---

[6] Listing 12.04 encompasses affective disorders. The required level of severity is met when the requirements of paragraphs A and B of Listing 12.04 are shown or when the requirements of paragraph C of Listing 12.04 are shown.
[7] Paragraph A requires proof of a depressive, manic, or bipolar syndrome.

In his decision, the ALJ also found that Plaintiff did not meet the criteria for Listing 12.06.[8]

Specifically, the ALJ found that:

> The medical records showed that the claimant does not have a generalized persistent anxiety disorder when he was compliant with his treatment and medication. The claimant reported during Dr. Wiger's consultative examination in January 2016 that his main disability was his sarcoidosis and that he was not mentally disabled. The claimant also denied any panic attacks, anxiety, or PTSD.

(Tr. 21) (internal citations omitted). The Court finds that the ALJ's findings are supported by the record. Specifically, in his consultative examination with Dr. Wiger, the Plaintiff "denied any impairing areas of anger management, panic attacks, anxiety, depression, mania, or PTSD." (Tr. 543). Dr. Wiger also noted that Plaintiff "states that because of his condition it is depressing, but [Plaintiff] does not describe an impairing mental health disorder." (Tr. 544). Thus, the ALJ's finding regarding Listing 12.06 was supported by substantial evidence in the record. Additionally, because Plaintiff does not allege, and the Court does not find, that there is any medical information that the ALJ should have but did not consider in finding that Plaintiff did not meet the criteria for Listing 12.06, the ALJ's finding was not error.

The ALJ also found that Plaintiff did not meet the criteria of "paragraph B" for Listing 12.04 and 12.06.[9] Paragraph B requires that the syndrome result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[10]

---

[8] Listing 12.06 encompasses anxiety-related disorders. The required level of severity is met when the requirements of paragraphs A and B of Listing 12.06 are shown or when the requirements of paragraphs A and C of Listing 12.06 are shown. Paragraph A requires proof of generalized persistent anxiety accompanied by at least three symptoms. Paragraph B is identical to paragraph B of Listing 12.04 and need not be repeated. Paragraph C of Listing 12.06 requires a showing of a "complete inability to function independently outside the area of one's home."

[9] Paragraph B of Listing 12.06 is identical to paragraph B of Listing 12.04.

[10] The Commissioner defines a "marked" degree of limitation as more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately,

Here, the ALJ found that "[b]ecause the claimant's mental impairment did not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria were not satisfied." (Tr. 22). Specifically, the ALJ found that: (1) regarding daily activities, Plaintiff has mild restrictions in his ability to initiate and participate in activities independent of supervision or direction but is able to perform his own personal care, drive, clean the dishes, cook, and so forth; (2) regarding social functioning, Plaintiff has only mild limitations in his capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals; (3) regarding concentration, persistence, or pace, Plaintiff has moderate limitations in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings; and (4) regarding repeated episodes of decompensation, Plaintiff has had no such episodes that have lasted for an extended duration. (Tr. 22). The Court finds that the ALJ's findings of fact are supported by evidence in the record. Specifically, in Plaintiff's May 17, 2015, Function Report, with regard to daily activities, Plaintiff stated that he prepares his own meals, cleans his room, goes outside 3–4 times a week, drives a car, uses a computer, and pays bills. (Tr. 270–272). Regarding social interaction, in the May 17, 2015, Function Report, Plaintiff also stated that he spends time with others, such as friends and family. (Tr. 272). Regarding concentration, in the May 17, 2015, Function Report, Plaintiff stated that on a good day he can concentrate for 1 to 2 hours and most days he can concentrate for 15 to 30 minutes. (Tr. 273). Lastly, regarding decompensation, the medical evidence shows that Plaintiff reported that he only suffered from "a little bit" of depression and no episodes of deterioration or decompensation at work or in work-like settings are noted. (Tr. 492).

---

effectively, and on a sustained basis. Lehnartz v. Barnhart, 142 F. App'x 939, 942 (8th Cir. 2005) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)).

Accordingly, because the ALJ's findings with regard to Listing 12.04 and 12.06 were supported by the evidence in the record, and because Plaintiff failed to identify any evidence that the ALJ failed to or improperly considered, the Court finds that the ALJ did not err in finding that Plaintiff did not meet the criteria for either Listing 12.04 or 12.06.

### 3. Plaintiff's ADHD

Plaintiff argues the ALJ erred when he found Plaintiff was not diagnosed with or treated for ADHD. (Plf.'s Mem., [Docket No. 14], at 12). Specifically, Plaintiff takes issue with the ALJ's finding that, "None of the claimant['s] recent medical records showed that he had been diagnosed with ADHD or is currently being treated for it." (Tr. 19–20).

Defendant argues that this finding was clearly a scrivener's error that had no effect on the outcome of Plaintiff's case. (Def.'s Mem., [Docket No. 18] at, 13). Specifically, Defendant contends that this error is evidenced by the fact that, despite the ALJ's statement, the ALJ still found that Plaintiff's ADHD was a severe impairment that "caused more than a minimal effect on his ability to perform work-related functions," and considered whether Plaintiff's ADHD met a listing. (Tr. 13). The Court agrees with Defendant.

An arguable deficiency in opinion-writing is not a sufficient reason to remand a case when the deficiency had no effect on the outcome. McGinnis v. Chater, 74 F.3d 873, 875 (8th Cir. 1996). In the present case, the ALJ's statement that, "None of the claimant['s] recent medical records showed that he had been diagnosed with ADHD or is currently being treated for it," was clearly a deficiency in opinion-writing. This is evidenced by the fact that even though the ALJ made this statement, the ALJ still proceeded to discuss Plaintiff's ADHD diagnosis throughout his decision. (Tr. 19–20, 32). Notably, the ALJ's aforementioned statement was made during the ALJ's discussion of whether Plaintiff's ADHD met the criteria of listings of 12.02 or 112.11. (Tr. 19–

20). Thus, by considering whether Plaintiff's ADHD met a listing, the ALJ clearly considered whether Plaintiff's ADHD was disabling. Additionally, the ALJ found that Plaintiff's ADHD caused more than a minimal effect on Plaintiff's ability to perform work-related functions. (Tr. 16). The ALJ also discussed how Plaintiff's medical records showed he was being treated for ADHD. (Tr. 28). Because the ALJ substantially discussed Plaintiff's ADHD throughout his decision, it is clear that the ALJ's statement that Plaintiff was not diagnosed with ADHD was no more than a deficiency in opinion-writing. Furthermore, because the ALJ considered whether Plaintiff's ADHD met a listing and ultimately determined that Plaintiff's ADHD was not disabling despite his errant statement, the ALJ's deficiency in opinion-writing is not a sufficient reason to remand the present case because it had no effect on the outcome of this case. See, McGinnis, 74 F.3d at 875.

### 4. Plaintiff's impairments in combination

Plaintiff argues that the ALJ erred by not considering Plaintiff's physical and mental impairments in combination. (Plf.'s Mem., [Docket No. 14], at 15).

As an initial matter, "the mere fact Plaintiff has been diagnosed with several different impairments does not establish he is disabled." Craig v. Berryhill, No. 4:16-CV-04024, 2017 WL 1147475, at *4 (W.D. Ark. Mar. 27, 2017). Plaintiff is correct, however, in that the ALJ is required to consider all of his impairments in combination in determining whether he is disabled. See, 20 C.F.R. § 404.1523. These diagnoses, however, do not necessarily establish he is disabled. See, e.g., Jones v. Astrue, 619 F.3d 963, 972 (8th Cir. 2010) (recognizing that a diagnosis does not per se establish a disability). Instead of merely evaluating the diagnoses, the Court should consider whether the ALJ properly considered Plaintiff's impairments in combination. See, Craig, 2017 WL 1147475, at *4.

In the present action, the ALJ stated that Plaintiff's impairments "considered individually and in combination, do not meet or medically equal a listed impairment." (Tr. 23). The ALJ also fully evaluated Plaintiff's medical records and references his alleged disabilities in his opinion. (Tr. 19–23). Specifically, the ALJ cited and discussed which medical records he relied on and how much weight he gave the different medical records, which included treatment notes from Dr. Wiger, Dr. Wilson, and Dr. Reed. (Tr. 21). Additionally, the ALJ provided a thorough discussion of Plaintiff's impairments, which included Plaintiff's sarcoid disease, depression, anxiety with panic attacks, ADHD, obesity, and lumbar disorder. (Tr. 16). Such analysis and these statements in the ALJ's opinion demonstrate he properly considered Plaintiff's impairments in combination. See, Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994) (holding that inclusive statements such as "the evidence as a whole does not show that the claimant's symptoms . . . preclude his past work as a janitor" and "[t]he claimant's impairments do not prevent him from performing janitorial work . . ." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments) (emphasis added). Thus, pursuant to the Eighth Circuit's holding in Hajek, this Court finds the ALJ properly considered the Plaintiff's impairments in combination.

### C. Dr. Wilson's Testimony

Plaintiff argues that the ALJ failed to properly develop the record by not letting Dr. Wilson, Plaintiff's treating psychologist, testify at the June 16, 2016, hearing. (Plf.'s Mem., [Docket No. 14], at 14–15). This argument, however, is without merit.

As previously explained, and as stated by the ALJ in his decision, Dr. Wilson appeared at the hearing but, due to an office-wide technical problem with the recording systems, Dr. Wilson was unable to provide live testimony at the hearing and instead submitted written statements and opinions on June 23, 2016. (Tr. 13).

The duty of the ALJ to develop the record—with or without counsel representing the claimant—is a widely recognized rule of long standing in Social Security cases:

> Normally in Anglo–American legal practice, courts rely on the rigors of the adversarial process to reveal the true facts of the case. However, social security hearings are non-adversarial. Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.

Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). See also, Johnson v. Astrue, 627 F.3d 316, 319–20 (8th Cir. 2010) (finding ALJ has a duty to develop the record even when claimant has counsel); 20 C.F.R. § 404.1512(b). If the record is insufficient to determine whether the claimant is disabled, the ALJ must develop the record by seeking additional evidence or clarification. McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). However, this is true only for "crucial" issues. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

In the present case, the ALJ's decision to allow Dr. Wilson to submit written testimony because the court's recording system failed at the hearing was not a failure to fully develop the record; it was quite the opposite. Specifically, in an effort to fully develop the record, the ALJ allowed Dr. Wilson to submit his testimony in written format since giving and preserving live testimony was not possible. Notably, failure to fully develop the record refers to the duty of the ALJ to determine whether Plaintiff is disabled. See, Kisling v. Chater, 105 F.3d 1255, 1257 n. 3 (8th Cir. 1997) ("The record itself, however, is sufficiently developed; the documents and testimony simply fail to support [the plaintiff's] claims."). In the present case, the evidence in the record was sufficiently developed to allow the ALJ to determine whether Plaintiff was disabled. Furthermore, it is clear that the ALJ considered Dr. Wilson's written testimony and opinions because it is referenced throughout the ALJ's decision. (Tr. 13, 28). Additionally, Plaintiff has not proffered any other information that Dr. Wilson would have provided had he given live testimony

as opposed to submitting written testimony. Therefore, the ALJ's decision to have Dr. Wilson submit written testimony in lieu of live testimony given the technological difficulties at the hearing was not error.

### D.  Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred by relying on the medical opinions of Dr. David Grant, M.D. ("Dr. Grant"), and Dr. Ann Fingar, M.D. ("Dr. Fingar"), because the doctors did not have access to all of Plaintiff's medical records and because the doctors are not specialists. (Plf.'s Mem., [Docket No. 14], at 16). Essentially, Plaintiff argues that the ALJ erred by assigning greater weight to the opinions of Dr. Grant and Dr. Fingar. (Id.). This argument, however, is without merit.

"The fact that a state agency medical consultant did not have access to all of the records does not prevent the ALJ from assigning significant weight to the consultant's assessment if the ALJ conducted an independent review of the evidence, which included notes the consultant had not considered." Vue v. Colvin, No. 13–cv–357 (ADM/FLN), 2014 WL 754873, at *9 (D. Minn. Feb. 26, 2014) (quotation omitted).

In the present case, Dr. Grant reviewed Plaintiff's medical records on July 29, 2015, and Dr. Fingar reviewed Plaintiff's medical records on July 30, 2015. (Tr. 460, 474). Plaintiff subsequently received further medical treatment after those dates and submitted his additional medical record to the ALJ for consideration.

Based on the ALJ's decision, it is clear that the ALJ considered Plaintiff's later medical treatment in his decision. (Tr. 23–33). Specifically, the ALJ references the treatment notes of Dr. Reed, Dr. Wiger, and Dr. Wilson, which all occurred after the state agency doctors reviewed Plaintiff's medical records. (Tr. 26–28). Thus, because the ALJ conducted an independent review

of the evidence, which included the notes that did not exist until after the review by the state agency consultants, Plaintiff's argument must fail. (Tr. 23–33).

Plaintiff also argues that the ALJ erred by not giving enough weight to Dr. Wilson's testimony because he was Plaintiff's treating mental-health physician. (Plf.'s Mem., [Docket No. 14], at 21).

"Generally, [a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (alternation in original) (internal quotation omitted). However, the Eighth Circuit has also frequently noted that "treating physician opinions may receive limited weight if they are conclusory or inconsistent with the record." See, Julin v. Colvin, 826 F. 3d 1082, 1088 (8th Cir. 2016). Furthermore, "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (quoting Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)) (emphasis added). Additionally, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

Under the relevant standards, Dr. Wilson is considered a "treating source," because he is a doctor that treated Plaintiff. See, Lacroix v. Barnhart, 465 F.3d 881, 885–86 (8th Cir. 2006) ("A 'treating source' is defined as a 'physician, psychologist, or other acceptable medical source' who treats the claimant."). Therefore, if a treating source's opinion is well-supported about the nature and severity of Plaintiff's impairments, and if their opinion is well-supported by medical evidence

25

and is not inconsistent with other substantial evidence in the record, their opinion is entitled to controlling weight unless relevant factors persuade the ALJ otherwise and the ALJ gives good reasons for declining to afford the opinion controlling weight. See, Tindall v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006); 20 C.F.R. § 404.1527(c)(2)-(6).

Based on the present record, and contrary to Plaintiff's argument, it is clear that the ALJ properly considered Dr. Wilson's medical opinions and gave his opinion appropriate weight. The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). As explained below, such was the case here. The Court's review of the record indicates that the ALJ's discounting of Dr. Wilson's opinion accurately reflects the state of the record as a whole.

As the ALJ explained in his decision, Dr. Wilson made several inconsistent statements regarding Plaintiff's "disabling" conditions. (Tr. 30). Specifically, the ALJ explicitly found that Dr. Wilson's opinion was inconsistent with his own treatment notes of Plaintiff. (Tr. 30). Regarding Plaintiff's mental functioning, in his written testimony Dr. Wilson indicated that Plaintiff experiences "marked" limitations. (Tr. 635). This, however, was inconsistent with Dr. Wilson's own treatment notes. For example, on December 14, 2015, Dr. Wilson noted that Plaintiff had a PHQ-9 score that indicated he had moderate depression. (Tr. 631).[11] On March 28, 2016, Dr. Wilson noted that Plaintiff's PHQ-9 score now indicated he only suffered from mild depression. (Tr. 631). These PHQ-9 scores are thus inconsistent with Dr. Wilson's written

---

[11] The Patient Health Questionnaire, PHQ–9, is used to screen, diagnose, monitor, and measure the severity of depression. Center for Quality Assessment and Improvement in Mental Health, available at http://www.cqaimh.org/pdf/tool_phq9.pdf. Scores of 10–14 indicate moderate major depression. Id. Scores of 15–19 indicate moderately severe major depression that warrants treatment with an antidepressant or psychotherapy. Id. Scores of 20 and greater indicate severe major depression that warrants treatment with an antidepressant and psychotherapy. Id. The highest possible score is 27, if the individual has endorsed all nine categories of symptoms occurring nearly every day. Id.

26

testimony that Plaintiff experiences "marked" limitation as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

In addition to Dr. Wilson's conclusions being inconsistent with his own treatment notes, his conclusions are also inconsistent with Plaintiff's own statements, as well as, the medical opinions of Plaintiff's other treating physicians. Notably, Plaintiff stated to Dr. Wiger that he only suffers from a "little bit" of depression, that his main disability was his sarcoidosis, and that he was not mentally disabled. (Tr. 542–544). Thus, Plaintiff's statement about his own mental disorder is inconsistent with Dr. Wilson's conclusions. Additionally, Dr. Wilson's medical opinions are at odds with the opinions of other doctors, such as Dr. Reed who noted that Plaintiff's "anxiety is clearly circumstantial." (Tr. 510). This also is inconsistent with Dr. Wilson's medical conclusions.

Accordingly, because Dr. Wilson's medical opinion was inconsistent with his own treatment notes, inconsistent with Plaintiff's own statements, and inconsistent with the medical opinions of other doctors, the ALJ properly concluded that his medical opinion regarding Plaintiff's limitations was entitled to lesser weight even though he was a treating physician.

### E.  ALJ's Hypothetical Question to the Vocational Expert

Plaintiff argues that the ALJ erred because he included in his hypothetical question to the vocational expert that Plaintiff had at least a high school education. (Plf.'s Mem., [Docket No. 14], at 23). Specifically, Plaintiff argues that he did not graduate from high school and does not have a GED. (Id.). Plaintiff's argument, however, is belied by the record.

At the hearing, Plaintiff testified that he was one credit short of graduating high school. (Tr. 51). The ALJ then posed the following hypothetical to VE Norman:

> Having you assume, of course, we're discussing an individual of the age range approximately for this issue here, I think, age about 36 to 38 Years. He does have,

of course, education up through high school except, apparently, about one credit short, according to one exhibit, of having a high school education; does have – which I'll treat it as 11th grade education – does have past work as he noted . . . . With those kind of limitations, in your opinion, could a person with those do any of the past jobs set out in your report?

(Tr. 73–74) (emphasis added). Therefore, based on the ALJ's question, Plaintiff's argument is clearly without merit. Accordingly, the Court also finds that the ALJ's hypothetical question to VE Norman correctly included all of Plaintiff's limitations. Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (citing Prosch, 201 F.3d at 1015) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true."). Thus, the Court finds that the ALJ's hypothetical was not error.

## F.  Substantial Evidence

Lastly, the Court notes that Plaintiff makes a passing reference to the argument that there is a lack of substantial evidence in the record to support the ALJ's determination overall that Plaintiff is not disabled; in support of that allegation, however, Plaintiff only points to his prior arguments that were already addressed by this Order. (See, Plf.'s Mem., [Docket No. 13], at 3–21).

Plaintiff also makes references to evidence he appears to believe supports a finding of disability. To the extent that Plaintiff argues here that there was also substantial evidence in the record that might have supported a finding of disability, the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, See, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's

28

findings.'" <u>See</u>, <u>Milam</u>, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court.

The Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff was not disabled as of September 30, 2015, as defined by the Social Security Administration Act, was supported by substantial evidence in the record. [12]

Therefore, the undersigned recommends Plaintiff's Motion for Summary Judgment, [Docket No. 13], be **DENIED**; Defendant's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**; and this matter be **DISMISSED with prejudice**.

## V. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, the Court

**HEREBY RECOMMENDS THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 13], be **DENIED**;

2. That Defendant's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**; and

3. This present case be **DISMISSED with prejudice**.

Dated:  January 22, 2019                                    s/Leo I. Brisbois
                                                            Leo I. Brisbois
                                                            United States Magistrate Judge

---

[12] Specifically, on the Court's review of the record as a whole, the ALJ's decision to discount Plaintiff's subjective complaints, his finding that Plaintiff had medical improvements, his finding that Plaintiff's medical improvements were related to his ability to work, his RFC determination, his decision that Plaintiff could not perform his past relevant work, and his decision that jobs existed in significant numbers in the national economy which Plaintiff could perform with the RFC limitations were each supported by substantial evidence in the record.